## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHYLLIS PARMENTER, : | |
|     Plaintiffs, : | |
| vs. : | Civil No. 3:06cv1585 (PCD) |
| : | |
| WAL-MART STORES, EAST, L.P. and : | |
| SUZANNE CARBONNEAU, : | |
|     Defendants. : | |

### RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Phyllis Parmenter filed a nine count Complaint against Defendant Wal-Mart Stores East L. P. and Suzanne Carbonneau[1] on October 10, 2006, seeking to recover damages and other relief as a result of Defendants' alleged violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), the Connecticut Fair Employment Protection Act, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA"), and state common law. On December 20, 2007, Defendants, pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 7 of the Local Rules of Procedure for the District of Connecticut, filed a motion to dismiss all Counts against Suzanne Carbonneau and Counts Five through Nine against Wal-Mart. In her Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss, Plaintiff conceded that Count Four should be dismissed against both Defendants and that the ADA and CFEPA Counts One through Three did not apply to Defendant Carbonneau as an individual. Accordingly, these claims are dismissed. Moreover, for the reasons stated herein, Defendants' Motion to Dismiss [Doc. No. 28] is **granted**.[2]

---

[1] As noted in Defendants' motion for partial dismissal, the correct spelling of Ms. Carbonneau's first name is "Susann." All court documents and filings continue to use the original, incorrect spelling, and therefore, for the sake of consistency, this Court will use it as well.

[2] Because Defendants' motion to dismiss is granted, their request for a more definite statement pursuant to Fed. R. Civ. P. 12(e) need not be addressed.

## I. BACKGROUND[3]

Plaintiff Phyllis Parmenter is a fifty year-old female formerly employed by Defendant Wal-Mart. (Compl. ¶¶ 8, 12, 69.) Plaintiff was hired by Defendant in 2000 as a Licensed Optician to work in Defendant's Optical Department. (Id. ¶ 12.) In 2004, Plaintiff was transferred to Wal-Mart's store in Lisbon, Connecticut where she worked as a Licensed Optician for twenty-eight hours a week and was considered a full-time employee with benefits. (Id. ¶¶ 13, 15.)

According to the Complaint, Plaintiff suffers from a "disability to her foot" stemming from a 1979 vehicle accident. (Id. ¶ 16.) This injury makes it difficult for Plaintiff to stand for long periods of time. (Id. ¶ 17.) Wal-Mart was aware of Plaintiff's disability because Plaintiff had applied for a handicapped parking spot and had provided documentation supporting her request. (Id. ¶ 18.)

During the course of Plaintiff's employment she made numerous complaints to Wal-Mart concerning practices and procedures occurring in the Optical Department that she considered improper or illegal. (Id. ¶ 19.) First, Plaintiff objected to Wal-Mart's practice of permitting its Optical Department to operate without the presence of a Licensed Optician. (Id. ¶ 20.) Plaintiff also realized that an apprentice of hers had made "several gross mistakes" and requested that apprentices no longer be placed under her license. (Id. ¶ 21.) Plaintiff notified Wal-Mart's legal department of these problems, which allegedly continued, and requested that the apprentice's paperwork be removed from the wall in the Optical Department and that her name be removed from the store's permit. (Id. ¶¶ 22, 23.) Plaintiff also reported that unlicensed and unsupervised

---

[3] Plaintiff's factual allegations, as set forth in the Complaint, are taken as true for purposes of the motion to dismiss. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

Optical Department personnel were disposing of medical files in an effort to be "paperless," in violation of a state law requiring that all medical records be kept at least seven years. (Id. ¶¶ 26, 27.)

In October 2003, Plaintiff underwent surgery on her disabled foot and was further restricted in her ability to stand for prolonged periods of time. (Id. ¶¶ 28, 29.) Plaintiff produced the necessary paperwork to put Wal-Mart on notice of her medical restrictions. (Id. ¶¶ 30.) Although Wal-Mart provided Plaintiff with a stool to sit on, Plaintiff was often scheduled to work alone at least one day a week for at least five hours at a time. (Id. ¶ 31.) Because Plaintiff had to stand to greet customers, answer two telephone lines, and complete sales at the register while performing her job of Licensed Optician, Plaintiff was unable to sit when working alone. (Id. ¶ 31, 33.) Plaintiff requested on several occasions that she not work alone because it exacerbated her injury, but Wal-Mart continued to schedule her to work alone even though, according to Plaintiff, it could have scheduled other personnel for the same shifts. (Id. ¶¶ 34, 35.)

Plaintiff also complains about the actions of Suzanne Carbonneau, another Licensed Optician, who was delegated management responsibility while the Optical Department was without an actual manager. (Id. ¶¶ 36, 37.) Plaintiff alleges that Carbonneau continually harassed, belittled, and publicly disparaged her in front of other staff and store customers. (Id. ¶ 38.) According to Plaintiff, once Carbonneau had managerial authority she began to reduce Plaintiff's hours and in July 2005, required Plaintiff to change her scheduled hours on a "trial basis." (Id. ¶ 39, 40.) When Plaintiff requested to be placed on her old schedule, Carbonneau allegedly "screamed" at Plaintiff that she was no longer a full-time employee but rather a part-time employee. (Id. ¶¶ 41-43.) Plaintiff contacted Wal-Mart's Ethics Committee in July 2005 and filed a complaint about Carbonneau's harassment. (Id. ¶ 44.) Plaintiff was notified in

September that her full-time status was being reinstated. (Id. ¶ 45.) Wal-Mart did not reinstate Plaintiff to full-time status, however, and Plaintiff's subsequent complaints to Wal-Mart's Ethics Committee were not answered. (Id. ¶¶ 46, 47.)

On June 22, 2005, a customer called the Optical Department and requested to arrive forty-five minutes late for his appointment, which would have been after the department's normal business hours. (Id. ¶¶ 48, 49.) Plaintiff could not stay late, but arranged for an apprentice to complete the appointment. (Id. ¶ 50.) The customer was "rude and irate" when Plaintiff informed him that she was unable to stay late. (Id. ¶ 51.) Fearing for her safety, Plaintiff contacted store security. (Id. ¶ 52.) Plaintiff was given a verbal warning about this confrontation. (Id. ¶ 54.) Plaintiff reluctantly accepted the verbal warning, however, when she was given a written warning for the same incident—which she believes violated Wal-Mart policy—she filed a complaint with Wal-Mart's Ethics Committee. (Id. ¶¶ 56-58.) The Ethics Committee promised to investigate and inform Plaintiff of the results, but failed to do so. (Id. ¶¶ 59, 60.)

On June 23, 2005, Plaintiff accidentally locked her office keys inside the Optical Department. (Id. ¶ 61.) She contacted store security, who advised her to "do whatever she had to do to retrieve the keys herself." (Id. ¶¶ 61, 62.) Plaintiff alleges that in such situations, store security is supposed to help and apparently had previously stated that they would make her a second set of keys. (Id. ¶¶ 63-65.) Plaintiff used a utility ladder to access the drop ceiling in an effort to try and open the door, but she fell ten feet off the ladder, suffering a concussion. (Id. ¶¶ 66, 67.) Plaintiff was written-up for this incident in July and was terminated by Wal-Mart on September 20, 2005. (Id. ¶¶ 68, 69.) Wal-Mart claimed that Plaintiff was being terminated in an effort to relieve the payroll burden. (Id. ¶¶ 68-70.) Plaintiff claims that she was terminated on account of her disability and because she made numerous complaints to Wal-Mart concerning

4

the illegal practices occurring in its Optical Department. (Id. ¶ 71.)

## II. STANDARD OF REVIEW

The function of a motion to dismiss pursuant to Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 744, 779 (2d Cir. 1984) (citation omitted). Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true, draw inferences therefrom in the light most favorable to the plaintiff, and construe the complaint liberally. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). Although detailed factual allegations are not required, a plaintiff must provide the grounds of her entitlement to relief are beyond mere "labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65.[4] In ruling on a motion under Rule 12(b)(6), the Court may consider only the allegations made in the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and any facts of which judicial notice may be taken. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996); Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

---

[4] The practical effect of Bell Atlantic on cases outside of the antitrust context has already begun to generate discussion in the courts. The Second Circuit recently interpreted Bell Atlantic as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible," but found that the Bell Atlantic Court "is not requiring a universal standard of heightened fact pleading." Iqbal v. Hasty, __ F.3d __, 2007 U.S. App. LEXIS 13911, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007). Here, the Court does not pass upon whether such amplification is required, as the Complaint, where deficient, is equally so under the Rule 12(b)(6) pleading regime in effect prior to Bell Atlantic.

## III. DISCUSSION

Employment relationships in Connecticut are generally "at-will," absent a contract to the contrary. Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 697-698, 802 A.2d 731, 735 (2002). At-will employment allows either party to terminate the employment relationship for any reason—or even without a reason—without fear of legal liability. Id. The Connecticut Supreme Court has, however, recognized an exception to the state's at-will employment policy, allowing a plaintiff to bring suit alleging wrongful termination "if [the] former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475, 427 A.2d 385, 386 (1980). For a plaintiff's claim to be sustained, the alleged wrongful termination must violate "an explicit statutory or constitutional provision or judicially conceived notion of public policy." Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 803, 734 A.2d 112, 133 (1999).

### A. Wrongful Termination Claim (Counts Five through Nine) Against Defendant Carbonneau

Plaintiff claims that Defendant Carbonneau is liable for wrongfully discharging her in violation of public policy. According to Plaintiff, Carbonneau had managerial authority over Plaintiff and acted as her direct supervisor for some of the time in which Plaintiff's claims against Defendants arose. (Compl. ¶¶ 36, 37.) Plaintiff argues that Carbonneau *could* be considered an employer to the extent that Carbonneau participated in the decision to terminate Plaintiff and her actions were the reason Plaintiff was terminated. (Pl.'s Mem. in Opp'n to Mot. to Dismiss 9.) In their motion to dismiss, Defendants argue that claims for wrongful termination only apply to employers and cannot lie against supervisors or fellow employees. (Defs.' Mem. in

Supp. of Mot. to Dismiss 7-9.) Defendants point out that Plaintiff does not allege that Carbonneau actually participated in the decision to terminate her, that Carbonneau's actions led to Plaintiff's termination, or that Carbonneau even knew that Plaintiff filed internal complaints. (Def.'s Reply 8.)

Connecticut courts refuse to permit terminated employees to sue fellow employees for wrongful termination; only those suits filed against the former employer have been permitted to go forward. See, e.g., Sheets, 179 Conn. at 480 (former manager at a frozen foods producer was permitted to bring suit against his *employer* on the basis that he was terminated in retaliation for efforts to bring to light the employer's violation of the Connecticut Uniform Food, Drug, and Cosmetics Act); Caesar v. Hartford Hospital, 46 F. Supp. 2d 174, 178 (D. Conn. 1999) (court dismissed a nurse's claims against individual employees but not the former employer because the employees were not the plaintiff's "employers [nor were they] parties to her employment contract"); Emerick v. Kuhn, No. CV 94-0460869S, 1994 WL 622001, at *2 (Conn. Super Ct. Oct. 18, 1994) (court dismissed wrongful termination against eight individual defendants, noting that "that there is no legal theory" in Connecticut permitting wrongful termination suits against individual, fellow employees); Stavena v. Sun Int'l. Hotels, Ltd., No. 116974, 2000 WL 994884 at *5 (Conn. Super. Ct. July 3, 2000) (court dismissed the wrongful termination claims against the individual defendants, because they did not have an "employment relationship" with plaintiff); Epworth v. Journal Register Co., No. CV 94 0065371, 1995 WL 80042, at *2 (Conn. Super. Ct. Feb. 15, 1995) (plaintiff's wrongful termination claim against an individual defendant acting as the employer's agent was insufficient as a matter of law).

Plaintiff has not pointed to any cases permitting a wrongful termination suit against an individual defendant who, like Carbonneau, was neither the employer nor privy to the

7

employment contract. Instead, Plaintiff relies heavily on her claim that Carbonneau exercised managerial authority over her during a time when Wal-Mart had no specific supervisor at the store's Vision Center. Regardless of the conduct Plaintiff alleges against Carbonneau, Plaintiff merely argues that Carbonneau "could be considered [Plaintiff's] employer" *if* Carbonneau participated in the decision to terminate the Plaintiff or if Carbonneau's actions were the reason Wal-Mart terminated Plaintiff. (Pl.'s Mem. in Opp'n to Mot. to Dismiss 9.) Such claims, even if true, fail to meet the requirement for a wrongful termination claim that an individual defendant must be the plaintiff's employer or privy to the employment contract. Because Defendant Carbonneau is not alleged to be either, the remaining Counts against Carbonneau, specifically Counts Five through Nine, are dismissed. Because there are no claims remaining against Carbonneau, she is terminated as a defendant.

### B. Wrongful Termination Claim (Counts Five through Nine) Against Defendant Wal-Mart

As discussed above, the Connecticut Supreme Court permits a plaintiff to bring a wrongful termination suit where the "former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Sheets, 179 Conn. at 475, 427 A.2d at 386. The Connecticut Appellate Court restricted the scope of the Sheets exception in Atkins v. Bridgeport Hydraulic Co., where it held that the public policy exception to the at-will employment doctrine is available only where "the employee was otherwise without a remedy and . . . permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated." 5 Conn. App. 643, 648, 501 A.2d 1223, 1226 (1985) (citing Wehr v. Burroughs Corp., 438 F. Supp. 1052, 1054 (D. Pa. 1977)). The Connecticut Supreme Court, after having held that the Sheets exception was "a narrow one"

in Parsons v. United Technologies Corp., 243 Conn. 66, 79, 700 A.2d 655, 663 (1997), explicitly affirmed Atkins and further limited Sheets by holding that a plaintiff cannot proceed with a wrongful termination suit if the plaintiff's claim is preempted by statute, either state or federal. See Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159-160, 745 A.2d 178, 181-182 (2000).

The Connecticut whistleblower statute, as codified at Connecticut General Statute § 31-51m, forbids an employer from discharging an employee because the employee reported a violation or suspected violation of the law to a public body. Conn. Gen. Stat. § 31-51m(b). Any employee discharged in violation of the statute can bring a civil suit after exhausting all available administrative remedies. Conn. Gen. Stat. § 31-51m(c). Section 31-51m provides the exclusive remedy for employees terminated for whistleblowing, precluding any common-law tort or contract actions, even where the plaintiff did not avail him- or herself of the statutory remedy or where the statutory remedy is unavailable. See Burnham, 205 Conn. at 163 (plaintiff could not maintain wrongful termination claim because of the available statutory remedy, even though she could not proceed under § 31-51m because she had not complained to a "public body"); Campbell v. Town of Plymouth, 74 Conn. App. 67, 74-76, 811 A.2d 243 (2002) (even though the plaintiff was barred from using the whistleblower statute due to the statute of limitations, the wrongful termination claim was preempted because "Section 31-51m . . . provides the exclusive remedy for [employees terminated for whistleblowing] and precludes any common-law actions in either tort or contract."); Pickering v. Aspen Dental Management, Inc., 100 Conn. App. 793, 799, 919 A.2d 520, 523 (2007) (the court held that the wrongful termination claim was barred by the whistleblower statute, § 31-51m, despite "the fact that the statute of limitations period on [the plaintiff's] claim ha[d] run . . . ."); Thibodeau, 260 Conn. at 718 (the existence of a statutory remedy, although unavailable to the plaintiff, nonetheless precluded a wrongful termination

9

claim); Lowe v. Amerigas Inc., 52 F. Supp. 2d 349, 358 (D. Conn 1999) (court held that the wrongful termination claim was preempted by § 31-51m, even though the plaintiff was barred from suing under the statute because he had not reported his allegations to a "public body.")

The Connecticut Appellate Court has explained the reasoning behind finding that a common law claim is preempted even where the statutory remedy is unavailable:

> A common-law approach to a claim of wrongful discharge is barred as long as a remedy has been made available to address the particular public policy concerns. The question is not whether the statutory cause of action remains viable as to a particular plaintiff. The fact that a remedy later becomes unavailable due to the running of a limitation period does not mean that there was no remedy available and therefore a common-law cause of action arises.

Campbell, 74 Conn. App. at 76; see also Kilduff v. Cosential, Inc., 289 F. Supp. 2d 12, 18 (D. Conn. 2003) ("The question is not whether any plaintiff would be without means of redress under the circumstances, but rather whether any plaintiff would be without remedy for the violation of public policy."). In Kilduff, the plaintiff argued that a dismissal of her wrongful termination claim would leave her without remedy because the statutory remedies were unavailable, however, in granting the motion to dismiss, the court held that "[t]he wrongful discharge cause of action is not intended to be a catch-all for those who either procedurally or on the merits fail to establish a claim under existing discrimination statutes . . . ." Id. at 18-19.

Connecticut also does not require that the statutory remedy be "equivalent" to a potential common-law cause of action. See Burnham, 252 Conn. at 164-165. Rather, where there is a statutory remedy addressing the public policy at issue, courts should adhere to the statutory remedial scheme dictated by the legislature, since "we can presume that the legislature would have provided additional relief in the statute if it thought it necessary." Id. at 165 (quotation omitted); see also Hunt v. Prior, 236 Conn. 421, 434, 673 A.2d 514 (1996) ("an administrative

remedy, in order to be adequate, need not comport with the plaintiffs' opinion of what a perfect remedy would be").

Defendant Wal-Mart argues that Counts Five though Nine of Plaintiff's Complaint should be dismissed, arguing that the Connecticut whistleblower statute preempts Plaintiff's common law claim of wrongful termination. Plaintiff argues that a statute should not be construed so as to replace a common law remedy unless the legislative intent to do so is clear. (See Pl.'s Mem. Opp. Mot. Dismiss 6 (citing Lynn v. Haybuster Mfg., Inc., 226 Conn. 282, 289-290, 627 A.2d 1288, 1292 (1990); Krulikowski v. Policast Corp., 153 Conn. 661, 667, 220 A.2d 444, 448 (1966).)

Plaintiff's argument against preemption relies heavily on decisions written after Atkins but before Burnham, a period during which there was a divergence in judicial understanding of the scope of preemption in Connecticut. During this time, some courts allowed the statutory claim to be brought alongside the wrongful termination claim where the statutory remedy was insufficient or less advantageous than the common law claim. See, e.g., Weeks v. Office Urban Affairs, No. CV92 0339298, 1994 WL 516561 (Conn. Super. Ct. Sept. 12, 1994) (court found whistleblower statute contained no language expressing intent of legislature to make statute sole remedy for wrongful termination, therefore plaintiff could proceed with common law and statutory claim); Kirchner v. Bicron Electronics Co., No. CV 95 0067312, 1995 WL 276085 (Conn. Super. Ct. May 3, 1995) (court found no preemption because plaintiff had only complained internally and, relying on Weeks, allowed the plaintiff to bring both common law wrongful termination claim in addition to a claim under § 31-51m); Miller v. Alpha Systems Inc., No. 0117227, 1995 WL 93424 (Conn. Super. Ct. Feb. 23, 1995) (held that a common law

11

claim is preempted only where the statutory remedy is adequate to compensate the plaintiff).[5]

Other Connecticut trial courts during this period followed Atkins' reasoning and preempted wrongful termination claims in cases where statutory provisions afforded remedies, regardless of whether the available remedy was equally advantageous. See, e.g., Dais v. Laidlaw Transit Co., No. CV 950146079S, 1996 WL 176370 at *1 (Conn. Super. Ct. March 29, 1996) (plaintiff's claim preempted by § 31-51m); Deura v. Greenwich Hospital, CV94 0140029 S, 1995 WL 235036 at *2 (Conn. Super. Ct. April 4, 1995) (public policies embodied in statutes relied upon by plaintiff preempted common law claim); Pucci v. American-Republican, No. 118491, 1994 WL 235316 at *3 (Conn. Super. Ct. May 23, 2004) (common law claim preempted by statutes relied on by plaintiff).

The other cases relied upon by Plaintiff can also be distinguished. For example, Plaintiff cited Gmyrek v. Lewis, No. 64149, 1992 WL 124146 (Conn. Super. Ct. May 28, 1992), as a case allowing a wrongful termination claim despite a statute on point. That court's decision, however, was based on the fact that the "gravamen" of the common law claim was the alleged wrongful termination, whereas the statute the defendant argued preempted the claim, Connecticut General Statute § 31-284(a), the Workers' Compensation Act, addressed claims for personal injury or death. Id. at *3. Similarly, in Mirto v. Laidlaw Transit Inc., No. 334321, 1993 WL 137627 (Conn. Super. Ct. April 20, 1993), the court denied a motion to strike, finding that the plaintiff's claim of wrongful termination was grounded in public policies of "providing reasonable transportation to Hamden school children, deterring fraudulent diversion of public funds, and

---

[5] Plaintiff also cites to McGrath v. General Dynamics Corp., Civ. No. H-88-155 (D. Conn. Dec. 21, 1990), which held that the Sheets doctrine allowing common law wrongful termination claims had "not been legislatively preempted" by the passage of § 31-51m. Id. at 5. McGrath, however, is an unreported decision that was written ten years before the Connecticut Supreme Court clarified state law in Burnham. Moreover, the decision does not reference the 1985 Atkins ruling, which limited the Sheets exception to cases where the employee was otherwise without remedy.

reporting false billings" and was thus not preempted by Connecticut General Statute § 31-51q, which protected employees' free speech rights. Id. at *3.

Plaintiff also relies on a recent case, Rogus v. Bayer Corp., No. 3:02cv1778 (MRK), 2004 WL 1920989 (D. Conn. Aug. 25, 2004), where the plaintiff facing a motion to dismiss her wrongful termination claim on account of § 31-51m argued that preemption should not apply in her case because her conduct did not "fall within the ambit of the statute" because she had not reported to a public body. Id. at *6. The court decided the motion on other grounds but stated, in dicta, that it would "be inclined to side" with the plaintiff because, as it read Burnham, conduct not falling within the "ambit" of § 31-51m was not preempted by the statute and thus the common law claim would be viable. Id. The court indicated that "where, as in Sheets, an employee is discharged not for reporting violations to a public body but instead for *internally* complaining about matters that implicate the state's public policy, this Court would be inclined to conclude that the common law wrongful discharge claim remains available to the employee." Id. In light of the substantial case law going the other way, the dicta in Rogus is not persuasive. Burnham makes clear that a wrongful termination claim for whistleblowing is preempted by § 31-51m, even if the plaintiff was could not recover under the statute because she had not complained to a public body. Burnham, 252 Conn. at 163.

Other cases from this district support Defendants' contention that the whistleblower statute preempts wrongful termination claims. In Key v. Wal-Mart, Inc., No. 3:03cv144 (RNC), 2004 WL 2377141 (D. Conn. Sept. 29, 2004), a case very similar to the one at bar, a former employee at a Vision Center was precluded from proceeding under a common law wrongful termination claim predicated on the public policy against discharging actual or potential whistleblowers. Id. at *2. The District Court held that the employee's common law claim was

13

preempted by the whistleblower statute, despite the fact the plaintiff had only complained internally and § 31-51m therefore was never an available remedy. Id. Likewise, in Armstead v. The Stop & Shop Cos., No. 3:01cv1489 (JBA), 2003 WL 1343245 (D. Conn. Mar. 17, 2003), the court found an action for wrongful discharge unavailable because statutory remedies existed to redress the plaintiff's claims of violations of public policy by the defendant employer. Id. at *3. The court, citing Burnham and Campbell, held that a statutory remedy bars a wrongful termination claim whether or not the plaintiff took advantage of the statute. Id. Finally, in Storm v. ITW Insert Molded Prods., 400 F. Supp. 2d. 443 (D. Conn. 2005), the court dismissed the common law claim even though the statutory remedy was potentially unavailable due to the passing of the statute of limitations. Id. at 447. The court also noted that wrongful termination claims can be permitted only in the absence of a statute on point because, "given the rule of at-will employment, [the Sheets] exception is not intended to subsume all unfair dismissals, only those which have the purpose or effect of subverting some unprotected public policy, otherwise the at-will doctrine would become meaningless." Id.

In order to succeed on a claim of wrongful termination, there must be an "important violation," Sheets, 179 Conn. at 475, of a "clearly established" public policy. Thibodeau, 260 Conn. at 701. Plaintiff claims wrongful termination for internally 'blowing the whistle' about her employer's violations of state statutes governing optical businesses. Plaintiff does not, however, claim that she was terminated for failing or refusing to go along with the alleged violations. Rather, Plaintiff claims that her right to "act as a whistleblower" was violated, which falls within the ambit of, and is preempted by, § 31-51m. (See Pl.'s Mem. in Opp'n to Mot. to Dismiss 4.) On this matter court decisions are clear: even if the statutory remedy, § 31-51m, is unavailable to a particular whistleblower, the common law wrongful termination claim is still preempted.

Burnham, 252 Conn. at 161-162; Lowe, 52 F. Supp. 2d at 358. It does not matter if a particular plaintiff is without remedy, as long as some plaintiff would have a remedy for the public policy allegedly violated by the termination. Campbell, 74 Conn. App. at 76; Kilduff, 289 F. Supp. 2d at 18. Cases permitting a common law wrongful termination claim have "relied upon the fact that in the context of their case the employee was *otherwise without remedy* **and** that permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated." Burnham, 252 Conn. at 159 (citing Atkins, 5 Conn. App. at 648) (second emphasis added). A "social policy" going unvindicated cannot singlehandedly support a wrongful termination claim; although Wal-Mart's conduct might have contravened the public policies contained in the cited statutes, Plaintiff fails to meet the requirement that she was "otherwise without remedy."

The legislature, through its enactment of § 31-51m, has granted employees discriminated against or terminated on account of whistleblowing a statutory cause of action. As such, any common law wrongful termination claim based on that whistleblowing conduct is preempted; the court is without jurisdiction to hear such common law claims. See Atkins, 5 Conn. App. at 643. Accordingly, Counts Five through Nine against Defendant Wal-Mart are dismissed.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Partial Motion to Dismiss [Doc. No. 28] is **granted**. All claims against Defendant Carbonneau are dismissed and Counts Five through Nine against Defendant Wal-Mart are dismissed. The case shall proceed with regard to Counts One through Four against Defendant Wal-Mart. The parties shall complete all discovery on or before November 30, 2007 and shall file any dispositive motions, compliant with the Supplemental Order, on or before January 7, 2008. If no dispositive motions are filed, the case shall be deemed ready for trial.

SO ORDERED.

Dated at New Haven, Connecticut, July   14  , 2007.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court